**POCAHONTAS STEAMSHIP CO. v. The ESSO ARUBA.**

**STANDARD OIL CO. v. POCAHONTAS STEAMSHIP CO.**
**The ISAAC T. MANN.**

Nos. 1565, 1586.

United States District Court
D. Massachusetts.

Sept. 11, 1950.

No. 1565:

Bingham, Dana & Gould, Boston, Mass., for petitioner.

Thomas H. Walsh, Boston, Mass., for respondent.

No. 1586:

Thomas H. Walsh, Boston, Mass., Kirlin, Campbell, Hickox & Keating, New York City, for petitioner.

Bingham, Dana & Gould, Boston, Mass., for respondent.

McCARTHY, District Judge.

These cross-libels in admiralty arise out of a collision between the S.S. Isaac T. Mann (hereinafter called the Mann), owned by Pocahontas Steamship Company, and the S.S. Esso Aruba (hereinafter called the Aruba), owned by Standard Oil Company. The collision occurred on May 18, 1948, in the East Passage of Narragansett Bay in the waters between Gould Island and Rose Island, in dense fog.

Action was commenced by the filing of a libel on behalf of Pocahontas Steamship Company against the Aruba, which was answered by Standard Oil Company, as owners of the Aruba. The latter company in turn filed a cross-libel against the Pocahontas Steamship Company and the Mann. These two actions were consolidated for the purpose of trial. The ownership of the vessels was admitted.

At the time of the trial the Pocahontas Steamship Company produced the following witnesses: William J. Keating, Captain; Benjamin F. Gray, Third Officer; and Anton Sodergren, helmsman. These witnesses were on board the Mann at the time of the collision. There was also testimony from Kenneth O. Curtis, who qualified as a radar expert. Depositions of Joseph Hudson, Chief Officer, George M. Barry, Third Assistant Engineer, and Herbert J. Barboza, Bow Lookout, all serving in those capacities aboard the Mann at the time in question, were offered in evidence by the Pocahontas Steamship Company and the Mann.

The Aruba offered no witnesses in person to testify at the trial, but the depositions of Captain Foster Gray, pilot; Melvin P. Breakiron, First Assistant Engineer; Abbo H. Kooistra, Captain; John W. Scheel, helmsman; Thomas R. Smith, Bow Lookout; and Robert J. Boxwell, Second Mate, relieving Chief Mate; all of whom were serving in those capacities aboard

the Aruba on May 18, 1948, were introduced in evidence.

The following are the facts as I find them to be:

The Mann, a steam collier, left her dock at Providence, Rhode Island, bound for Hampton Roads, Virginia, at approximately 6 A.M., Eastern Daylight Saving Time[1]. After heading down the Providence River and clearing the wharves at Providence she proceeded on various courses and speeds until Gould Island was abeam at 8:07 A.M. At about that time Captain Keating on the bridge of the Mann observed a haze and behind it a bank of fog rolling in from sea; a lookout was thereupon sent forward to a position on the bow of the Mann. At 8:08 Captain Keating put the Mann's engine on half speed as a precautionary measure on account of the fog bank which was then still some distance ahead of the Mann; and at 8:09, as a further precaution, the Mann's engine was put on slow ahead. Between 8:09 and 8:10 the Mann commenced sounding single blasts on the whistle at half-minute intervals. At that time visibility was about half a mile.

Meanwhile the Aruba, a steam tanker, loaded with approximately 92,000 barrels of fuel oil, was entering Narragansett Bay en route to Providence, Rhode Island, making arrival in the vicinity of Brenton Reef Lightship at approximately 7:08 A.M., where Captain Foster Gray boarded the vessel to act as pilot at 7:15. When the Aruba arrived in the area of the mouth of the East Passage of Narragansett Bay, known as The Dumplings, fog was encountered, rolling in from the sea and overtaking it, at 7:51, at which time the vessel's engines were placed at "standby" and the vessel commenced sounding regulation fog signals. At 8:04, upon hearing a tug with tow some distance ahead and on her starboard bow, she stopped her engine. Pilot Gray then conversed with the tugmaster and advised the latter that there was dense fog below them. After passing the tug and barge, the Aruba at 8:06 put her engines on half speed ahead.

From this point on there is a conflict of testimony as well as a confusion of the records. To begin with, there is a definite discrepancy between the times logged in the Aruba's bridge bell book and her engine room bell book. A thorough analysis of the times logged in the various bell books for particular events makes it inescapably clear that the Aruba's engine room clock was one to two minutes slower than her pilot house clock, which, in turn, was one minute slow of the Mann's clock. The collision occurred at 8:12, (Aruba pilot house clock time), 8:13 (Mann clock time). Taking these factors into account, I find that the collision occurred in the following manner.

Having put her engines on half speed ahead at 8:06, the Aruba proceeded through dense fog until 8:11 (Aruba time) when her engines were stopped. At a time shortly before 8:11 (Aruba time) Pilot Gray testified that he heard a one-blast signal from a vessel (which afterwards proved to be the Mann) from a point apparently on the Aruba's starboard bow well forward of her starboard beam. The Aruba did not stop her engines upon hearing that signal, but continued to proceed at half speed ahead until 8:11 when she heard a second signal from the Mann, also on her starboard bow, at which time she stopped her engines.[2]

1. The logs and bell books of the Mann were kept in Eastern Daylight Saving Time. The logs and bell books of the Aruba were kept in Eastern Standard Time. For the purposes of this memorandum one hour is added to all pertinent times recorded in the Aruba's log and bell books in order that the times of the two ships may be comparable, as reflected in Eastern Daylight Saving Time.

2. Pilot Foster Gray testified on direct examination that he immediately stopped on first hearing the Mann, but on cross-examination he twice stated that he stopped the engine when he heard the second whistle from the Mann.

"Q. Then how long was it between the time you heard the first blast and the time you heard the second one blast? A. A couple of minutes, or something like that at most, but when I heard the whistle, I stopped the engine.

It is contended by the Aruba that her engines were stopped at 8:09 because this time appears in the bridge bell book. But that entry was made by Boxwell after the collision had taken place and was obtained from the "Engineer's Bell Book" which was two minutes slow of bridge time. An original and contemporaneous entry by bridge time "7:11 Stop. Sighted ship—2 whistles" had been made in the bridge bell book by Boxwell. When Boxwell transcribed his subsequent memorandum entitled "Bells as per Engineers (sic) Bell Book" he placed a notation "2 whistles" next to the "7:09 Stop" entry, by which he himself has clearly identified that stop signal with his earlier notation in the bridge bell book "7:11 Stop. Sighted ship—2 whistles". It is thus evident that the first stop made by the Aruba was at 8:11, after hearing a *second* whistle from a ship forward of its beam.

Immediately after the Aruba's engines were stopped the Mann was sighted, almost simultaneously, by the bow lookout and those on the Aruba's bridge, bearing a point and a half on the Aruba's starboard bow, heading a little toward her; Pilot Gray testified that he "would say he (Captain Keating) was backing the ship (Mann)". Visibility was then between 500 and 800 feet.

Returning momentarily to the Mann, at 8:09[3] she was proceeding at slow ahead. At 8:11 two whistles were heard, the Mann's engines were stopped, and she drifted with the engines on stop. At 8:12 the engines were put on half astern as a precautionary measure to reduce headway. A few seconds thereafter the Aruba loomed out of the fog. The Mann's engines were full astern.

At this juncture the Aruba blew a two-blast passing signal to the Mann which was an invitation for a starboard to starboard passing. The Aruba contends that

the Mann then "crossed" the Aruba's two-blast signal with a one-blast signal, which those on the Aruba took to indicate the Mann's intention of passing the Aruba on the Mann's port side. Captain Keating denies having sounded a one-blast passing signal. I attach considerable weight to his testimony. The probabilities are strongly against such a one-blast passing signal in the light of all the attending facts and circumstances. The Mann at the time was backing and was swinging to starboard (backing to port) under the effect of the stern bells. Such a Starboard Swing tended to bring the Mann across the Aruba's course line. It would have been virtually impossible under the conditions surrounding the two ships at the time of the accident to have effected a starboard-to-starboard passage with safety and it would have been equally hazardous to attempt to cross the Aruba's bow, as a one-blast signal would have invited. The Mann, under these conditions, was backing away in an effort to avoid the collision; this is clearly indicated by the testimony of Captain Keating that a three-blast signal was given. The Mann then sounded a four-blast danger signal. It seems probable that the one-blast signal which the Aruba interpreted as a passing signal was in fact a fog signal which the Mann was sounding as she emerged from the fog. I find that the Mann did not sound a one-blast passing signal.

Having sighted the Mann at 8:11 the Aruba's engines were placed on full astern, also at 8:11, and the danger signal was sounded. Within the same sixty seconds she went full ahead, apparently in an effort to "run around" the Mann under hard right rudder when a collision became imminent. At practically the same time the Mann, which had dropped its port anchor, contacted the starboard side of the Aruba with its stem, striking at about the latter's bridge. At the time of collision the Mann's

"Q. You mean when you heard the second whistle? A. When I heard the second whistle I stopped the engine.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Q. And then when you heard the second blast what did you do to the engines?

A. I stopped them." (Deposition of Foster Gray, p. 26.)

3. Mann time. Times attributed to the Mann are taken from her bridge clock, which, as heretofore noted, was one minute fast of Aruba bridge time.

speed was one-half knot, the Aruba's four or five knots. The shock of collision was slight; the Aruba's Chief Engineer felt only a slight lurch in the upper engine room; there was no cut into the side of the Aruba; the stem of the Mann was only slightly disturbed by the contact.

■ I find that this collision would not have occurred if the Aruba had been proceeding at a moderate speed in thick fog. Four or five knots under the prevailing conditions was not a moderate speed. The Mann, on the other hand, had reduced her speed to a point which would have allowed her to stop within her share of the seeing distance after sighting the Aruba if the Aruba had been navigating prudently. If the Aruba had come to a stop upon hearing the first fog signal from the Mann and had thereafter proceeded at a moderate rate of speed, the probabilities are that the collision would not have occurred. It was this failure to exercise reasonable diligence which was the cause of the collision.

The Aruba has charged the Mann with certain other faults which require a brief discussion, viz., failure to sound proper fog signals, failure to maintain a proper lookout, failure to use her radar, and violation of the Narrow Channel Rule, 33 U.S.C.A. § 210.

I find that the Mann sounded proper fog signals certainly beyond any peradventure of doubt from 8:09 or 8:10. Assuming arguendo that the Steamship Mann should have commenced sounding signals several minutes earlier, her failure to do so had no bearing on this collision. She did sound at least four or five; those on the Aruba heard only two. Under these circumstances, the failure to sound fog signals earlier could not have had any possible bearing on the navigation of the Aruba.

As to lookouts—due to the low-lying fog bridge, personnel on both ships were as well equipped and able to sight approaching vessels as were the lookouts. No fault on the part of the lookout on either vessel contributed to the collision.

■ Advocate for the Aruba argues that the Mann was at fault because it discontinued using its radar some time before the collision. Captain Keating had been using the radar aboard the Mann on a five-mile range for the passage between Providence and Sandy Point; on the five-mile range false targets were picked up. "We were getting quite a lot of interference," Captain Keating testified. At the time the Mann ran into fog he "gave up trying to use the radar because the objects were so hard to make out". I find that Captain Keating under all the attending facts and circumstances was not negligent in discontinuing the use of the radar. While radar is one of the greatest boons devised for navigation, it is not a fixed and invariable rule that the navigator must use it in all events. There might well be times when the continued use of radar by a navigator who was uncertain of the results he was observing and unwilling to place reliance thereon might well be foolhardy and hazardous. There should be a certain discretion allowed competent and experienced ship-handlers to use or not use radar as the circumstances of the moment require. Compare The Medford, D.C., E.D.N.Y., 65 F.Supp. 622.

■ Finally, it is contended that the Mann violated the Narrow Channel Rule, 33 U.S.C.A. § 210. The short answer to this is that it has been held that the East Passage of Narragansett Bay is not a narrow channel within the meaning of that section. The Lexington, 2 Cir., 275 F. 279, 284. Further, it is plain here that the grievous fault of the Aruba in proceeding at an immoderate speed was the proximate cause of the collision even though the Mann was on the east side of the channel. I am convinced that the Mann's position did not contribute to the collision.

### Conclusion

By failing to stop her engines upon first hearing the fog signal of the Mann apparently forward of her beam and in an unascertained position, the Aruba violated the second paragraph of Article 16 of the Inland Rules, 33 U.S.C.A. § 192, and was therefore at fault in that respect.

By failing to navigate at a moderate speed in the dense fog for at least twelve minutes before the collision, the Aruba

violated the first paragraph of Article 16 of the Inland Rules, supra, and was therefore at fault in that respect.

The Mann was not guilty of any fault which contributed to the collision.

The Aruba was solely at fault for the collision and resulting damages.

A decree may be entered accordingly, and the matter subsequently referred to a Commissioner as to the amount of damages.[4]

4. The Court expresses its appreciation for the excellent briefs submitted by the learned advocates in this matter. A case which is, to a great extent, submitted through depositions is apt to be more difficult to decide than one in which the witnesses all appear in court. The briefs, containing an excellent analysis of the testimony at the trial as well as the 238 pages of depositions have done much to dispel the fog, both literal and figurative, which surrounded this collision.